## McNeill's Administratrix v. Riley et ux.

(Decided Nov. 9, 1934.)

H. C. CLAY for appellant.

C. R. LUKER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Mary M. McNeill, as administratrix of the estate of her deceased husband, J. R. McNeill, brought this

suit against J. T. Riley and wife to recover on a $1,500 note, and to enforce a mortgage lien on certain land located in Laurel county. From a judgment dismissing the petition, this appeal is prosecuted.

The mortgage is dated December 17, 1928, and was acknowledged by J. T. Riley and Ophelia Riley, his wife, on February 9, 1929. The mortgage recites that it was given to secure "fifteen hundred dollars ($1,500.00) being a loan this day made by second party to first party, evidenced by a note of even date herewith, due and payable twelve months from this date, and bearing six per cent. interest from date until paid." The land mortgaged was the home place of J. T. Riley, and consisted of about 45 acres. The mortgage was filed with the petition, but the petition alleged that the note had been lost or misplaced, and could not be found. The defense to the suit was that the mortgage was executed without consideration; that the defendant J. T. Riley was under indictment for willful murder; that he gave the mortgage to Robert McNeill, who was a special friend of his, for the purpose of securing the money with which to defend his case, and to secure said McNeill against loss of any money that might be furnished, but that no money was furnished.

J. T. Riley testified as follows: He had been convicted of manslaughter. Some time after his conviction, he executed a mortgage. He executed it on the condition that Bob McNeill was to assist him in getting him out of the penitentiary, and provide his wife and family with money and clothes. It was agreed that the mortgage should not be recorded unless McNeill spent the money, and no money was ever spent by McNeill. McNeill was killed shortly after the execution of the mortgage.

According to Sue E. McNeill, sister of J. R. McNeill, Tip Riley, who was a colored man, had always come to her brother when in trouble. As her brother later told her, Tip brought her brother a paper, and, when her brother said he would not accept the paper, Tip explained to him that in the event of trouble, or his wife or family were in real need while he was in the penitentiary, they would send to him and have him advance money on this paper, and in the event they did not have to ask for any help while he was away, the paper was to be returned to him.

George Riley, son of J. T. Riley, testified that he was present when his father executed the mortgage to Robert McNeill, and heard them talking about it. If Tip or his family needed any money, Bob was to put up the money on the mortgage. Bob did not give his father any money at that time or at any other time, as far as he knew. The only thing he knew about the transaction was that he heard the talk between his father and Mr. McNeill. C. R. Luker testified that he defended Tip Riley on the charge of murder, and took a mortgage on some personal property for his fee. He later sold the property and got his fee, all except $50, which he understood was sent to him by Robert McNeill. After Tip's motion for a new trial had been overruled Bob McNeill came to the witness and told him not to appeal the case, that he had made arrangements with Tip to furnish what money was necessary in attempting to secure a pardon, and he thought it would be a better chance than to appeal the case. There were no expenses incurred on the trial except the fee of witness, and he got that.

Mary McNeill testified as follows: The first time she saw the mortgage, Bob, her husband, handed it to her, and asked her to put it away in a trunk. Later on he said he was going to take it down to the cellar and put it with the rest of his old papers. After his death, she found it in a quart jar in the cellar with one or two other small pieces of paper. At three different times, whether before or after the mortgage was executed she could not say, J. T. Riley got money from Bob at her house. One day Bob gave him $500, and another time $700, and another time $300 more. Bob said, "That makes the $1,500.00 that I was to let you have, and you was to give me a mortgage for it." She admitted that her husband had gotten a deed from the Rileys for 6 acres of land, and also for 3 acres of land.

In rebuttal, J. T. Riley testified that Bob McNeill never paid him $700 one time, or $500 at another, or $300 at another time, or any sums at any time.

It is first insisted that the defense was not available in the absence of an allegation of fraud or mistake. It is true that a contemporaneous oral agreement, inconsistent with a written contract, cannot be relied on in the absence of an allegation of fraud or mistake (Tross v. Bills' Ex'x, 189 Ky. 115, 224 S. W. 660), and that evidence of a verbal agreement is not admissible

to vary or contradict the terms of a note containing an unconditional promise to pay (Payne v. Claypool, 235 Ky. 526, 31 S. W. [2d] 901); but this rule does not apply to the consideration stated in a written contract. On the contrary, we have a statute providing that the consideration of any writing, with or without seal, may be impeached or denied by pleading verified by oath, section 472, Kentucky Statutes, and we have uniformly ruled that under this section the true consideration of a deed, without an allegation of fraud or mistake, may be shown by parol, although it contradicts the written instrument. Hite v. Reynolds, 163 Ky. 502, 173 S. W. 1108, Ann. Cas. 1917B, 619; Holbrook v. Letcher County, 223 Ky. 597, 4 S. W. (2d) 382. Following this rule, we held in Newton v. Newton's Adm'r, 214 Ky. 278, 283 S. W. 83, that, although the deed recited that a cash consideration was paid, parol evidence was admissible to show that the real consideration was an agreement to hold in trust. Stripped of unnecessary verbiage, the defense here was that the mortgage was executed to secure sums to be advanced, and none were advanced. In short, there was no consideration.

Coming to the evidence, we find that the court sustained exceptions to the evidence of the administratrix and J. T. Riley, in so far as it related to verbal statements of, or any transaction with, or any act done or omitted to be done by J. R. McNeill, who was dead when the testimony was given. As Mrs. McNeill was the wife of J. R. McNeill at the time the transaction occurred, and also had a pecuniary interest in his estate, it is clear that she was not a competent witness. Section 606, subsecs. 1, 2, Civ. Code Prac.; Combs v. Roark, 206 Ky. 454, 267 S. W. 210; North American Accident Ins. Co. v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297; Continental Jewelry Co. v. Blair, 237 Ky. 805, 36 S. W. (2d) 636. As Riley was testifying for himself concerning transactions with the deceased, it also follows that he was not a competent witness. Section 606, subsec. 2, Civ. Code Prac.; Wallace v. Wallace, 224 Ky. 532, 6 S. W. (2d) 683. Doubtless, if there had been no objection to the evidence of Mrs. McNeill that she was present and saw her husband pay certain sums to Riley, her evidence would have made Riley's rebuttal evidence admissible, but as the exceptions were sustained to Mrs. McNeill's evidence, it was proper also to sustain exceptions to Riley's rebuttal evidence.

174

"Laying aside the evidence of Mrs. McNeill and of J. T. Riley, we have on the one hand the mortgage and note, which imports a consideration. On the other hand, we have the following: The note itself was not found. The mortgage was found in a jar in the cellar, and was never recorded in the lifetime of the mortgagee. Miss McNeill, the sister of J. R. McNeill, the mortgagee, says that her brother told her that Tip (J. T. Riley) explained to him that, if his wife or family were in real need while he was in the penitentiary, they would send to him and have him advance money on the paper, but in the event they did not have to ask for any help while he was away, the paper was to be returned to him. George Riley, son of J. T. Riley, says that he was present and heard his father and Robert McNeill talking about the mortgage, and that if Tip and his family needed any money, Bob was to put up the money on the mortgage. According to C. R. Luker, there were no expenses incurred on the trial of Riley except his fee, and he got that. After the motion for a new trial had been overruled, Bob McNeill came to him and told him not to appeal the case, that he had made arrangements with Tip to furnish what money was necessary in attempting to secure a pardon, and he thought it would be a better chance than to appeal the case. In view of this showing, and of the absence of any evidence that Riley at or about the time the mortgage was executed had on hand, or used, or expended any large sum of money, we are inclined to agree with the chancellor that the only consideration for the mortgage was the sums to be advanced, and that none were advanced.

Judgment affirmed.